
FILED
2016 Oct-12  PM 04:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JERRY WADE MOORE,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) Case No.:  **5:15-CV-02117** |
| **REDDY ICE CORPORATION,** | ) ) ) |
| **Defendants.** | ) |

## DEFENDANT REDDY ICE CORPORATION'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the defendant Reddy Ice Corporation and files this Brief in Support of Its Motion for Summary Judgment.

## I.     EVIDENTIARY SUBMISSION

### A. Plaintiff's complaint

Plaintiff's complaint arises from an accident that occurred on August 13, 2013 at the Reddy Ice Corporation facility located in Athens, Alabama. Plaintiff injured his

small finger when it got caught in a conveyor belt used to transport ice bags to plaintiff's truck.

Plaintiff's complaint is framed in one count for negligence and alleges that there were no guards on the conveyor belt that would have prevented plaintiff's finger from getting caught in the moving parts of the conveyor belt. Plaintiff alleges that the defendant removed or allowed to be removed the alleged guard from the conveyor.

### B. Plaintiffs Previous Use of the Conveyor.

Plaintiff would help his father-in-law who owned Rigling Ice load ice at Reddy Ice's facility when his father-in-law was sick or for other reasons. (Doc. 5-1, p. 2 (depo. p. 22, lines 1 – 3; 7 - 14)). Plaintiff's father-in-law had bought ice from Reddy Ice for years prior to the accident at the subject location. (Doc. 5-1, p. 2 (depo. p. 24, lines 13 – 20; and p. 3 (depo. p. 25, lines 1 – 7)). They would pick up bags of ice from Reddy Ice using a pick-up truck equipped with a refrigerated box. (Doc. 5-1, p. 3 (depo. p. 25, lines 8 - 16)). The refrigerated box normally holds 380 bags of ice. At the time he arrived to load the ice on the day of the accident, the box was empty. (Doc. 5-1, p. 6 (depo. p. 39, lines 16 – 21)).

Plaintiff had been to pick up ice at Reddy Ice's facility several times before the subject accident. (Doc. 5-1, p. 3 (depo. p. 26, lines 2 – 11)). Plaintiff picked up bags of

ice at Reddy Ice's facility two or three times a month for a year or two prior to his accident. (Doc. 5-1, p. 3 (depo. p. 26, lines 20 – 23) and (depo. p. 27, lines 1 – 13)).

Normally, plaintiff would be by himself when he went to Reddy Ice to load ice. (Doc. 5-1, p. 3 (depo. p. 28, lines 9 – 12)). There are several conveyors (referred to as "belts" by plaintiff) located at the Reddy Ice facility but plaintiff always loaded his truck using the same conveyor that he was using at the time of the accident. (Doc. 5-1, p. 3 (depo. p. 28, lines 17 – 23); Doc. 5-1, p. 4 (depo. p. 30, lines 1 - 3)).

### C. The Facts of the Accident.

On the day of the accident plaintiff backed up his truck to the subject conveyor. (Doc. 5-1, p. 5 (depo. p. 35, lines 14 – 23)). George, an employee of Reddy Ice, told plaintiff he was ready to run the conveyor. At that point plaintiff opened the door to the refrigerated box and the truck was backed up towards the conveyor so that the end of the conveyor entered the refrigerated box door and extended about halfway into the refrigerated box. (Doc. 5-1, p. 5 (depo. p. 36, lines 1 – 23)). Plaintiff then got into the refrigerated box so that he could unload bags of ice as they came into the truck on the conveyor. (Doc. 5-1, p. 5 (depo p. 36, lines 18 – 23)).

George was waiting to turn on the conveyor. (Doc. 5-1, p. 6 (depo. p. 36, lines 21 – 23)). Ten pound bags of ice started coming down the conveyor into the truck (Doc. 5-1, p. 6 (depo. p. 39, lines 10 – 13)). Plaintiff who was inside the truck started

stacking the ice bags into the box. (Doc. 5-1, p. 7 (depo. p. 42, lines 14 – 23)). As the refrigerated box began to fill up with ice bags, George would move the pick-up truck forward resulting in the end of the conveyor being positioned further back in the refrigerated box so more ice could be stacked in the box. The box is about eight feet long. (Doc. 5-1, p. 8 (depo. p. 45, lines 5 – 10)).

George moved the truck twice on the day of the accident. (Doc. 5-1, p. 7 (depo. p. 44, lines 16 - 22)). Plaintiff stacked the ice bags with the conveyor running for about ten minutes in between the times that George moved the truck. (Doc. 5-1, p. 8 (depo. 46, lines 11 – 21; and Doc. 5-1, p. 8 (depo. p. 47, lines 1 – 7)).

The last time George moved the truck, the end of the conveyor was located at the door to the refrigerated box. The conveyor was cut off and plaintiff got out of the refrigerated box so that he could continue to load the rear of the box. (Doc. 5-1, p. 9 (depo. p. 51, lines 5 – 11)). At this point, plaintiff was standing on the truck platform at the back of the truck. (Doc. 5-1, p. 9 (depo. p. 51, lines 7 – 11)).

George turned on the conveyor and plaintiff started lifting ice bags off the conveyor. (Doc. 5-1, p. 9 (depo. p. 51, lines 17 – 21)). Plaintiff knew to be careful loading the ice prior to the accident. (Doc. 5-2, p. 10 (depo. p. 130, lines 19 – 21)). Plaintiff could not catch all the bags because they were moving too fast on the conveyor. (Doc. 5-1, p. 9 (depo. p. 52, lines 1 – 9)). Plaintiff was picking up ice bags

off the conveyor using two hands and chunking the bags into the refrigerated box. (Doc. 5-1, p. 9 (depo. p. 52, lines 5 – 6)). It was during this activity that plaintiff's little finger was injured when it got caught between the conveyor belt and the conveyor roller. (Doc. 5-1, p. 9 (depo. p. 52, lines 6 – 9)). Documents 5-3 and 5-4 are a photographs of the conveyor on which plaintiff was injured. The "X" on Doc. 5-3 indicates the location where plaintiff's finger was caught. (Doc. 5-1, p. 4 (depo. p. 29, lines 4 – 18); Doc. 5-2, p. 8 (depo. p. 108, lines 21 – 23); Doc. 5-2, p. 6 (depo. p. 109, lines 1 – 8); Doc. 5-3; Doc. 5-4). Plaintiff was able to pull his finger out in some slack in the belt. (Doc. 5-2 , p. 1 (depo. p. 54, lines 2 - 5)).

### D. Conveyor Speed.

Plaintiff testified that the accident occurred while he was "picking the bags off blindly because the belt was running too fast" and that he was "not looking at the bag" when he was getting the bag of ice because the bags were going too fast. (Doc. 5-2, p. 7 (depo. p. 104, lines 5 – 13)). Plaintiff testified that he asked Reddy Ice several times on days prior to the accident to slow the conveyor down. Plaintiff did not ask Reddy Ice to slow the conveyor down on the day of the accident. (Doc. 5-2, p. 7 (depo. p. 104, lines 13 – 23) and Doc. 5-2, p. 8 (depo. p. 105, lines 1 – 4)).

The procedure plaintiff used to load the ice bags on the day of the accident was the same procedure he had always used. (Doc. 5-2, p. 2 (depo. p. 58, lines 8 – 23); and

Doc. 5-2, p. 2 (depo. p. 59, line 1)). The speed of the conveyor ran at the same speed it had always run prior to the day of the accident and the speed did not change the day of the accident while he was unloading the ice bags. (Doc. 5-2, p. 1 (depo. p.56, lines 4 – 16; Doc. 5-2, p. 2 (depo. p. 57, line 23) and (depo. p. 58, lines 1 – 7)). Plaintiff had about 75 to 100 bags left to load of the total 380 bags at the time of the accident. (Doc. 5-2, p. 2 (depo. p. 59, lines 18 – 21)).

Plaintiff knew the conveyor was going too fast on the day of the accident because its was going at the same speed it always went. (Doc. 5-2, p. 8 (depo. p. 105, lines 1 – 23)). On the day of the accident when he started loading the ice, he knew the conveyor was running at its normal speed and he considered this speed to be to fast. (Doc. 5-2, p. 8 (depo. p. 106, lines 1 -23) and (depo. p. 107, lines 1 -3)). Despite this knowledge, he continued to load the truck with bags of ice. (Doc. 5-2, p. 8 (depo. p. 107, lines 1 -23) and (depo. p. 108, lines 1 – 17)). Plaintiff continued to load the truck on the day of the accident the same way he loaded time after time with the conveyor running at the same speed. (Doc. 5-2, p. 10 (depo. p. 131, lines 17 – 21)). Plaintiff knew on the day of the accident, prior to the accident that it was impossible to keep your eye on the belt. (Doc. 5-2, p. 10 (depo. p. 132, lines 1 – 9)).

### E.   Side Guards on the Conveyor

Plaintiff had never observed any guards along the sides of the accident

conveyor. (Doc. 5-2, p. 3 (depo. p. 82, lines 20 – 23) and (depo. 83, lines 1- 23)). The accident conveyor on the day of the accident, prior to the accident, looked to be in the same condition as it always looked before the accident. (Doc. 5-2, p. 3 (depo. p. 83, lines 7 – 23); and p. 5 (depo. p. 91, lines 5 – 15)). On the day of the accident there was nothing blocking his vision that would have prevented him from seeing whether there was a side guard on the conveyor or not. (Doc. 5-2, p. 5 (depo. 89, lines 4 – 23), (depo. p. 90, lines 1 – 23) and (depo. p. 91, lines 1 – 13)).

No changes were made to the conveyor following the accident but plaintiff still continued to load ice at Reddy Ice using the same conveyor following the accident. (Doc. 5-2, p. 4 (depo. p. 87, lines 7 – 17)).

### F.     Appreciation of the Risk of Injury.

Plaintiff testified that anyone looking at the conveyor would know that they would not want to place their hand close to the belt. (Doc. 5-2, p. 6 (depo. p. 97, lines 6 - 14)). He further testified that he would not want to place his hand close to the belt. (Doc. 5-2, p. 6 (depo. p. 97, lines 6 – 18)). Plaintiff knew prior to the accident that if he put his hand at the conveyor and if the belt caught his hand that it would cause injury. (Doc. 5-2, p. 6 (depo. p. 99, lines 13 – 20)).

## II.     STANDARD OF REVIEW

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."   *Clark v Coats & Clark, Inc., 929 F.2d 604, 608 (11 th Cir. 1991)*. Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992)*. However, the mere existence of any factual dispute will not necessarily compel denial of a motion for summary judgment; rather, only material

factual disputes preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004)*.

## III.  ARGUMENT

### A.  NATURE OF THE DEFENDANT'S DUTY

For many years, Alabama has been "firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. *Geis v. Tennessee Coal, Iron & R.R. Co., 143 Ala. 299, 39 So. 301 (1905)*.

"In determining whether such care has been exercised, it is proper to consider the uses and purposes for which the property in question is primarily intended." *Ex parte Industrial Distribution Servs. Warehouse, 709 So.2d 16 (Ala.1997)*. Accordingly, "[t]he invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to

an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.'" *Id.* at 20-21.  Stated differently, "the focus of our premises liability law is not on the care that may have been exercised by the invitee ..., but on relieving a premises owner of a legal liability where an invitee knew of the danger that caused the injury or should have observed that danger through the exercise of reasonable care." " *Id.* at 20-21. The "entire basis of a [business's] liability rests upon [its] superior knowledge of the danger which causes the [customer's] injuries." *Fowler v. CEC Entm't, 921 So.2d 428, 432-33 (Ala.Civ.App. 2005)*.

When making the analysis discussed above, the Alabama Supreme Court has held that "an objective standard [is applied] to assess whether a hazard is open and obvious" and that, in applying that standard, "the question is whether the danger should have been observed, not whether in fact it was consciously appreciated." *Jones Food Co. v. Shipman, 981 So.2d 355, 362 (Ala.2006)*.  That opinion further explained:

> " '[I]n order for a defendant-invitor in a premises -liability case to win a summary judgment or a judgment as a matter of law grounded on the absence of a duty on the invitor to eliminate open and  obvious hazards or to warn the invitee about  them, the record need not contain undisputed evidence  that the plaintiff-invitee consciously appreciated the danger at the moment of the mishap.... [The Alabama Supreme] Court has expressly rejected the notion that an invitor owes a duty to eliminate  open and obvious hazards or to warn the invitee about them if the invitor "should anticipate the harm  despite such knowledge or obviousness."

*Id.*; s*ee also*, *Ex parte Gold Kist, Inc., 686 So.2d 260, 261  (Ala.1996)*.

–10–

"For a condition to be obvious, the condition and the risk must be apparent to, and of the type that would be recognized by, a reasonable person in the position of the invitee." *Hartzog v. Compass Bank, 686 So.2d 325, 327 (Ala.Civ.App. 1996)*; see also *Fred's Department Store v. Paschal, 923 So.2d 1125, 1129 (Ala.Civ.App. 2005)*.

"There is no presumption of negligence which arises from the mere fact of an injury to an invitee." *Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388(Ala 1937)*. The ". . . mere fact that plaintiff was injured while in the shop of defendant raises no presumption of negligence, and if there was nothing in the evidence to establish negligence, save the fact of plaintiff's injury, the defendant would be entitled to the general charge." *Id.* "The owner of a premises . . . is not an insurer of the safety of his invitees . . . and the principle of res ipsa loquitur is not applicable." *Ex parte Harold L. Martin Distrib. Co., 769 So.2d 313, 314 (Ala.2000)*. Quite simply, "[a] premises owner . . . owes no duty to protect invitees from all conceivable dangers they might face while on the premises. . .." *Id.*

**B. The Defendant Breached No Duties Owed to Plaintiff.**

Plaintiff was an invitee on Reddy Ice's premises at the time of the accident. As cited above, if Reddy Ice's premises was dangerous, it must give plaintiff, an invitee, sufficient warning of the danger to enable him, by the use of ordinary care, to avoid it.

Assuming the conveyor was a hazard, Reddy Ice, was under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers. Furthermore, Reddy Ice

is not liable for injury to plaintiff resulting from a danger which was obvious or should have been observed by him in the exercise of reasonable care.

An objective standard is applied to assess whether a hazard is open and obvious. In applying the standard, the question is whether the danger should have been observed, not whether in fact it was consciously appreciated. In this case it is alleged the subject conveyor was dangerous because it lacked a guard covering the conveyor belt.

The evidence shows that plaintiff had used the subject conveyor on a regular basis prior to the accident. By plaintiff's own account, he had been using the subject conveyor two to three times a month for one to two years prior to the accident. Plaintiff followed the same loading procedure and used the same conveyor on the day of the accident that he had always used for previous 12 to 24 months preceding the accident.

The procedure plaintiff used placed him within arms reach of the unguarded conveyor belt two to three times a month for one to two years. The accident conveyor on the day of the accident looked the same as it had always looked prior to the

accident. Photographs, Doc. 5-3 and Doc. 5-4, show the conveyor as it appeared on the day of the accident and for the one or two years prior to the accident that plaintiff used the conveyor. This condition was clearly visible to plaintiff prior to the accident and on the day of the accident, prior to plaintiff's injury. Plaintiff observed this condition prior to the accident. Plaintiff had never seen any guards installed along the sides of the accident conveyor. According to plaintiff, anyone, including himself, knew not to put their hand up close to the belt. Plaintiff knew prior to the accident that if he put his hand at the conveyor and if the belt caught his hand that it would cause injury. Furthermore, the conveyor speed at the time of the accident was the same speed as it had always operated. He knew the speed, in his opinion, was too fast prior to the accident.

In <u>Ex parte Neese, 819 So.2d 584 (Ala. 2001)</u> plaintiff was injured when she slipped on the rain-slickened underside of a door mat that was lying upside down on a walkway leading from the driveway to the house. The plaintiff had been visiting the house for 8 to 10 years. On the day of the accident plaintiff crossed safely over or by the doormat at least three times. Plaintiff testified that she had turned away from the mat before she fell because she heard someone open the door. The Court held that the upside-down mat constituted an open and obvious danger which plaintiff in the exercise of ordinary care should have recognized as a matter of law. Summary

judgment was granted in favor of the defendant because plaintiff failed to present substantial evidence creating a genuine issue of material fact as to whether the doormat constituted a hidden defect about which the defendant had superior knowledge.

Likewise, in the case at bar, plaintiff had experience using the subject conveyor long before his accident. Plaintiff had been working in close proximity to the conveyor belt for one to two years before the accident. The conveyor had never been guarded and looked the same on the day of the accident as it always looked. On the day of the accident, plaintiff had loaded approximately 280 bags of ice off the conveyor before the accident. Plaintiff clearly knew or should have known that there was no guard on the conveyor at the time of the accident. The lack of the guard was not a hidden defect of which the defendant had superior knowledge compared to plaintiff's knowledge.

In *Cirlot v Waffle House, Inc., 2012 U.S. Dist. LEXIS 134758; 2012 WL 4479234* plaintiff opened the front door to a Waffle House as someone inside was coming out. Plaintiff backed up to avoid the individual and fell off the curb. Plaintiff walked backward still facing the door when she fell. It was alleged the sidewalk was not constructed in accordance with ADA. The Court found that the hazard created by the non-compliance with ADA, i.e. the height differential from the parking lot to the

front door, was open and obvious and granted summary judgment in favor of Waffle House. There was no evidence the invitor possessed any superior knowledge that the sidewalk posed any danger to its invitees. Waffle House had no duty to reconstruct or alter its premises so as to obviate known and obvious dangers. Similarly, in the case at bar, this defendant was under no duty to modify the conveyor to obviate the danger of the conveyor which was open and obvious and should have been observed in the exercise of reasonable care by a reasonable person in the position of plaintiff.

The Court in *Heath v Sims Brothers Construction Co, 529 So.2d 994 (Ala. 1988)* granted summary judgment on the open and obvious defense with regards to an employee of a subcontractor who was working on a scaffold when one of the wheels of the scaffold fell into a hole in the floor causing the employee to fall. Plaintiff admitted he was aware of the hole in the floor. The Court affirmed summary judgment in favor of the defendant holding that the danger was open and obvious and that the plaintiff should have recognized, and that by his own admission, did recognize. As in *Heath*, the danger associated with the unguarded conveyor belt should have been recognized by a reasonable person in the position of plaintiff and, in fact, was recognized by plaintiff according to his own testimony.

As a matter of law, the alleged defect, i.e. the unguarded conveyor belt, was a condition that would have been apparent to and recognized by a reasonable person in

the position of plaintiff. Even from a subjective standpoint, which is not the law in Alabama, plaintiff knew prior to the accident that the conveyor belt was not guarded. Furthermore, the risk of injury if one got their finger or hand in the conveyor would have been apparent and recognized by a reasonable person in the position of plaintiff. In fact plaintiff testified that anyone, including himself, knew by looking at the conveyor not to place their hand near the belt. Under Alabama's objective standard, the lack of a guard on the conveyor belt was clearly open and obvious. Thus, this defendant had no duty to warn plaintiff that the conveyor belt was not guarded. The danger was in no way hidden, veiled or obscured. Reddy Ice had no superior knowledge regarding the alleged defect compared to the knowledge of plaintiff.

## IV.   CONCLUSION

Accordingly, the defendant has shown that there is no genuine issue of material fact as to its proof of the open and obvious defense. No reasonable invitee in plaintiff's position would have been ignorant of the hazard posed by the exposed conveyor belt while in operation. Due to the fact that plaintiff's injuries were caused by an open and obvious hazard, plaintiff cannot recover on his negligence claim, as a matter of law. Thus, defendant's motion for summary judgment is due to be granted.

/s/ W. Scott McGarrah, III
**W. SCOTT MCGARRAH, III (MCG005)**

/s/ Teresa D. Davenport
**TERESA D. DAVENPORT (DAV074)**
Attorneys for Defendant, Reddy Ice Corporation

**OF COUNSEL:**

ALLEN & NEWMAN, PLLC
Post Office Box 43548
Birmingham, AL 35243
(205) 972-8989

**CERTIFICATE OF SERVICE**

I hereby certify that I have this the 12 day of October, 2016, served a copy of the foregoing on the following attorneys of record:

Derrick A. Mills, Esq.
Marsh, Rickard & Bryan, P. C.
800 shades Creek Parkway, Suite 600-D
Birmingham, Alabama 35209

/s/ W. Scott McGarrah, III
OF COUNSEL